652 So.2d 346 (1995)
Victor Tony JONES, Appellant,
v.
STATE of Florida, Appellee.
No. 81482.
Supreme Court of Florida.
January 12, 1995.
Rehearing Denied March 31, 1995.
*348 Nancy C. Wear, Coral Gables, for appellant, cross-appellee.
Robert A. Butterworth, Atty. Gen., and Fariba N. Komeily and Randall Sutton, Asst. Attys. Gen., Miami, for appellee, cross-appellant.
PER CURIAM.
Victor Tony Jones, a prisoner under two sentences of death, appeals his convictions of first-degree murder and armed robbery and the attendant sentences. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
Jones was convicted of two counts of first-degree murder and two counts of armed robbery. According to the evidence presented at the trial, on December 19, 1990, the bodies of sixty-six-year-old Matilda Nestor and sixty-seven-year-old Jacob Nestor were discovered in their place of business. Mr. Nestor's body was found in the main office. He had been stabbed once in the chest. An empty holster was found on Mr. Nestor's waistband. Mrs. Nestor's body was discovered in the bathroom. She had been stabbed once in the back. The Nestors' new employee, Victor Tony Jones, was found slumped over on the couch in the main office not far from Mr. Nestor's body. The butt of a .22 caliber automatic pistol was protruding from under Jones' arm.
According to the evidence, December 19 was Jones' second day of work for the Nestors. It appears that as Mrs. Nestor was entering the bathroom in the rear of the building Jones came up behind her and stabbed her once in the back. As Mr. Nestor came toward the bathroom from the main office, Jones stabbed him once in the chest. The medical examiner testified that Mrs. Nestor died as result of a stab wound to the base of her neck which severed the aorta that carries blood and oxygen to the brain and Mr. Nestor died as a result of the stab wound to his chest which entered his heart.
There was evidence that after being stabbed, Mr. Nestor retreated into the office, where he pulled the knife from his chest, attempted to call for help, drew his .22 caliber automatic pistol and shot five times, striking Jones once in the forehead. No money or valuables were found on either victim or in Mrs. Nestor's purse which was found on the couch in the main office next to the defendant. The evidence also was consistent with Mr. Nestor's body having been rolled over after he collapsed so that personal property could be removed from his pockets.
After the couple was murdered, Jones was locked inside the building where he remained until police knocked down the door after being called to the scene by a neighbor. Money, keys, cigarette lighters and a small change purse that was later identified as belonging to Mrs. Nestor were found in Jones' front pocket. The Nestors' wallets were later found in the defendant's pants pockets. It was not immediately apparent to the police that Jones had been shot. However, after Jones was handcuffed and escorted from the building, he complained of a headache. When an officer noticed blood on Jones' forehead, and asked what happened, Jones responded, "The old man shot me." Rescue workers were called and Jones was taken to the hospital. While in the intensive care unit, Jones told a nurse that he had to leave because he had "killed those people." When asked why, Jones told the nurse, "They owed me money and I had to kill them."
Jones was found guilty of two counts of first-degree murder and two counts of armed robbery. The jury recommended death for the murder of Mrs. Nestor by a vote of ten to two. It unanimously recommended death for the murder of Mr. Nestor. The trial court followed the recommendations. As to each murder, the court found in aggravation: 1) Jones was under a sentence of imprisonment at the time of the murder, 2) Jones was convicted of a prior violent felony, 3) the murder was committed during the course of a robbery, and 4) the murder was committed for pecuniary gain, which the court merged with the "during the course of a robbery" *349 aggravating factor.[1] Although Jones presented evidence that he had been abandoned at an early age by his mother and that he suffered from extreme emotional or mental disturbance throughout his life, the court found nothing in mitigation. Jones was sentenced to life imprisonment for each robbery conviction, all sentences to run consecutively. Jones appeals.
Jones raises the following five claims in this appeal: 1) the trial court erred by denying his motion for judgment of acquittal on the two armed robbery counts; 2) the trial court erred by failing to instruct the jury that if it found both the aggravating factor of "during the course of a robbery" and the aggravating factor of "for pecuniary gain" that it had to consider the two factors as one; 3) the trial court erroneously rejected Jones' mental or emotional disturbance at the time of the offense as a statutory mitigating factor and failed to properly instruct the jury on the factor; 4) a new sentencing proceeding is required because the mental health experts who testified failed to bring the possibility that Jones suffered from fetal alcohol syndrome/fetal alcohol effect to the court's attention and because the court refused to consider Jones' abandonment by his mother as a mitigating circumstance; and 5) the trial court erred by failing to grant Jones' motion for mistrial based upon various alleged improper comments made by the prosecutor during penalty phase closing argument.
First, we reject Jones' claim that he was entitled to a judgment of acquittal on the two counts of armed robbery. Jones maintains that a judgment of acquittal was warranted because the Nestors never perceived the use of force or violence in connection with the taking of their property. Jones contends that because the evidence establishes a "post-humous theft" rather than robbery, the robbery convictions must be reduced to convictions of petit theft and a new sentencing proceeding must be ordered because the robbery aggravator was improperly considered by the jury and found by the trial court. We disagree.
Robbery is "the taking of money or other property which may be the subject of larceny from the person or custody of another when in the course of the taking there is the use of force, violence, assault, or putting in fear." § 812.13(1), Fla. Stat. (1989) (emphasis added). An act is considered "`in the course of the taking' if it occurs either prior to, contemporaneous with, or subsequent to the taking of the property and if it and the act of taking constitute a continuous series of acts or events." § 812.13(3)(b), Fla. Stat. (1989). Thus, a taking of property that otherwise would be considered a theft constitutes robbery when in the course of the taking either force, violence, assault, or putting in fear is used. We have long recognized that it is the element of threat or force that distinguishes the offense of robbery from the offense of theft. Royal v. State, 490 So.2d 44, 46 (Fla. 1986), receded from on other grounds, Taylor v. State, 608 So.2d 804 (Fla. 1992); Montsdoca v. State, 84 Fla. 82, 93 So. 157 (1922). Under section 812.13, the violence or intimidation may occur prior to, contemporaneous with, or subsequent to the taking of the property so long as both the act of violence or intimidation and the taking constitute a continuous series of acts or events.
A victim does not have to perceive the force or violence used in the course of a taking in order for the element of force or violence to be present. See Mitchell v. State, 407 So.2d 343 (Fla. 4th DCA 1981) (element of force or violence supported robbery conviction where victim was unaware of defendant's presence because defendant struck victim from behind rendering him unconscious). Under the plain language of the robbery statute, all that is required to support a conviction under the force or violence component of the statute is that the act of force or violence be a part of "a continuous series of acts or events" that include the taking. There is no requirement that the victim be aware that a robbery is being committed if force or violence was used to render the victim unaware of the taking. Mitchell; accord 2 Wayne R. LaFave & Austin W. Scott, Jr. Substantive Criminal Law § 8.11(d), at 445 n. 39 (1986); People v. Bartowsheski, 661 P.2d 235 (Colo. 1983) (where *350 force is employed for the purpose of making the victim unaware of the taking force component of robbery statute is satisfied). In other words, where the defendant employs force or violence that renders the victim unaware of the taking, the force or violence component of the robbery statute is satisfied.
In this case, even if the Nestors were unaware of the fact that Jones was attacking them in order to take their property, force or violence was used in the course of the taking. There was evidence that Jones stabbed Mrs. Nestor in the back, leaving her to die in the bathroom; Jones then turned his attention to Mr. Nestor, whom he killed with one forceful stab to the heart. There also was evidence that after he murdered the couple, Jones rolled Mr. Nestor over in order to take the man's wallet and at some point rummaged through Mrs. Nestor's purse, removing any valuables. The violent murders and the taking of the couple's property clearly were part of a continuous series of acts or events as provided under section 812.13. Moreover, any argument that Jones killed the Nestors for some unexplained reason and then took their property as an afterthought, thus negating the finding that the murders were committed while Jones was engaged in the commission of a robbery, is rebutted by Jones' statement to Nurse Crum that he killed "those people" because they "owed" him money. Cf. Knowles v. State, 632 So.2d 62, 66 (Fla. 1993) (finding that murder was committed during the course of a robbery not supported by the record where there was no evidence that defendant, who had free access to father's truck prior to the shooting, intended to take the truck prior to the shooting or that he shot father in order to take the truck). We have upheld a robbery conviction and the finding of the robbery aggravator in a case involving a similar posthumous taking of a murder victim's property. See Bruno v. State, 574 So.2d 76 (Fla.) (robbery conviction upheld where defendant killed victim, left victim's apartment and then returned a short time later to take victim's stereo and VCR which he had expressed an interest in prior to the murder), cert. denied, 502 U.S. 834, 112 S.Ct. 112, 116 L.Ed.2d 81 (1991).
We also find no merit to Jones' contention that Mrs. Nestor was not robbed because no property was "taken from her person or from her immediate custody or control." Under section 812.13(1) the taking must be "from the person or custody of another." However, the property that is the subject of the taking need not be in the actual physical possession or immediate presence of the person. Property is taken from "the person or custody of another" if it is sufficiently under the victim's control so that the victim could have prevented the taking if she had not been subjected to violence or intimidation by the robber. 2 Lafave & Scott, supra, § 8.11(c), at 443 (1986). As this Court explained in Wood v. State, 98 Fla. 703, 709, 124 So. 44, 46 (1929):
If [the property] is away from the owner [or custodian], yet under his control, for instance in another room of the house, or in another building on his property, it is nevertheless in his personal possession; and if he is deprived thereof, it may well be said it is taken from his person.
In this case, Mrs. Nestor's purse was found on the couch in the main office. Even if Mrs. Nestor did not have the purse with her at the time Jones attacked her, she did not give up custody or control of it simply by going to the bathroom in another part of the building.
Accordingly, there was sufficient evidence to submit the robbery charges to the jury and to support both the guilty verdicts on those counts and the finding of the robbery aggravating factor. Although Jones does not challenge the sufficiency of the evidence to support his murder convictions, our review of the record reveals competent substantial evidence to support those convictions too.
The remainder of Jones' claims concern the penalty phase of the trial. We find no merit to Jones' contention that the trial court erred in not instructing the jury to merge the "during the course of a robbery" and "pecuniary gain" aggravating factors. In Castro v. State, 597 So.2d 259, 261 (Fla. 1992), we explained that when requested the trial court should give a limiting instruction advising the jury that if it finds both of these aggravating factors present, it must consider the two factors as one. However, there was *351 no error in this case because defense counsel never requested a limiting instruction and the trial court expressly merged the two factors in its sentencing order. Derrick v. State, 641 So.2d 378, 380 (Fla. 1994).
Jones' next claim deals with the court's refusal to omit the word "extreme" from the standard instruction on the statutory mitigating circumstance of "under the influence of an extreme mental or emotional disturbance" at the time of the murder. Jones reads this Court's decision in Cheshire v. State, 568 So.2d 908 (Fla. 1990), as requiring the court to omit the word "extreme" from the standard instruction when requested. We have never imposed such a requirement. See Stewart v. State, 558 So.2d 416 (Fla. 1990) (proper to refuse request to delete word "extreme" from standard instruction on statutory mental mitigating circumstance). Cheshire merely stands for the proposition that "any [mental or] emotional disturbance relevant to the crime must be considered and weighed by the sentencer" as a nonstatutory mitigating circumstance. Id. at 912. It does not require the omission of the word extreme from the standard instruction.
In this case, neither the jury nor the sentencing judge was restricted to consideration of extreme mental or emotional disturbance. Jones' jury was given both the standard instruction on nonstatutory mitigating circumstances, which explains that the jury may consider "any other aspect of the defendant's character or record, [and] any other circumstances of the offense," as well as an expanded instruction requested by defense counsel that defined mitigating circumstances as "factors that, in fairness or in the totality of the defendant's life or character may be considered as extenuating or reducing the degree of moral culpability for the crimes committed." These instructions were sufficient to inform the jury that it could consider nonstatutory mental mitigation. See Jones v. State, 612 So.2d 1370 (Fla. 1992) (no requirement that the jury be given instructions on each nonstatutory mitigator that may be considered), cert. denied, ___ U.S. ___, 114 S.Ct. 112, 126 L.Ed.2d 78 (1993). Thus, we find no error in connection with the challenged instruction.
Nor can it be said that the trial judge abused his discretion in rejecting the mental mitigation urged. Wyatt v. State, 641 So.2d 355 (Fla. 1994) (decision as to whether a mitigating circumstance has been established is within the trial court's discretion). The trial judge expressly considered whether Jones was suffering from extreme mental or emotional disturbance at the time of the murders. The judge also considered the possibility that Jones was suffering from mental or emotional disturbance that was less than extreme but rejected these factors based on expert testimony presented by the State that refuted the existence of either statutory or nonstatutory mental mitigation. As a separate nonstatutory mitigating circumstance the trial judge considered the fact that Jones was "an abandoned child who was raised by relatives." The court rejected this "childhood scenario" as a mitigating factor, reasoning that Jones' mother delivered him into an "infinitely superior environment" where he was cared for by "decent, law abiding and God fearing" relatives who "cared for him as if he was one of their own" and where he did well in school and was a good child.
Jones challenges the trial judge's failure to find his abandonment by an alcoholic mother in mitigation and maintains that a new sentencing proceeding is required because the mental health experts who testified did not bring to the court's attention the fact that Jones likely suffers from fetal alcohol syndrome. First, on this record, the court did not abuse its discretion by refusing to find in mitigation that Jones was abandoned by an alcoholic mother. Sochor v. State, 619 So.2d 285, 293 (Fla.) (within trial court's discretion to determine whether family or personal history establishes a mitigating circumstance), cert. denied, ___ U.S. ___, 114 S.Ct. 638, 126 L.Ed.2d 596 (1993).
We also reject the second part of this claim. Fetal alcohol syndrome was never mentioned during the proceedings below. Jones presented no evidence that he suffered from such disability or that his mother was consuming alcohol prior to or during her pregnancy. Thus, any claim that the trial court erred in failing to consider the likelihood *352 that Jones suffers from fetal alcohol syndrome is totally without merit. A trial court is not required to speculate as to mitigation that is not apparent from the record. See Muhammad v. State, 494 So.2d 969, 976 (Fla. 1986) (trial court has no obligation to infer a mitigating circumstance that was not urged at trial and for which no evidence was presented), cert. denied, 479 U.S. 1101, 107 S.Ct. 1332, 94 L.Ed.2d 183 (1987); cf. Farr v. State, 621 So.2d 1368 (Fla. 1993) (mitigating evidence must be considered when contained anywhere in the record). Finally, any claim that mitigating evidence existed that was not presented at trial is properly raised in a collateral proceeding for post-conviction relief under Florida Rule of Criminal Procedure 3.850, rather than on direct appeal. See Heiney v. State, 620 So.2d 171 (Fla. 1993) (failure to investigate and present mitigation that existed at time of sentencing raised in rule 3.850 motion for post-conviction relief).
As his final claim, Jones maintains that he is entitled to a new sentencing proceeding due to the individual and cumulative effect of several comments made by the prosecutor during penalty phase argument. Jones first argues that by describing Mrs. Nestor's murder as an "assassination" the State improperly instructed the jury on the aggravating factor of "cold, calculated and premeditated." Jones objected to this characterization and moved for a mistrial. However, the specific grounds raised here were not argued below and must be considered waived. Ferguson v. State, 417 So.2d 639, 641 (Fla. 1982) (objection to prosecutorial comment must be made with sufficient specificity to apprise trial court of the potential error in order to preserve issue for appeal). Even if the issue had been preserved, we would find no error. The prosecutor's reference to the "assassination" of Mrs. Nestor was made in connection with a discussion of possible mitigation: "What can explain what is in mitigation of an assassination of Dollie Nestor." As noted by the trial court in overruling the objection, assassination was a reasonable characterization of the first-degree murder of Mrs. Nestor. Even if it were not, use of the term was not so prejudicial as to warrant a mistrial. Cf. Burr v. State, 466 So.2d 1051, 1054 (Fla.) (prosecutor's statements that people were afraid and that defendant "executes" people were fair comment on evidence and were not so inflammatory or prejudicial as to warrant a mistrial), cert. denied, 474 U.S. 879, 106 S.Ct. 201, 88 L.Ed.2d 170 (1985).
Jones also maintains that a comment about former President Gerald Ford and Justice Clarence Thomas so inflamed the jury as to entitle him to a new sentencing proceeding. The State urged the jury to use its common sense to reject the defense expert's testimony that because Jones had been abandoned by his mother and raised by his aunt he suffered from extreme mental or emotional distress throughout his life. In making this argument, the prosecutor pointed out that although Clarence Thomas had been raised in a foster home and Gerald Ford had been adopted, they had been able make positive choices in their lives. Later in the argument, the prosecutor continued:
Dr. Toomer has testified that [Jones] was under extreme mental disturbance. Is everyone raised in a foster home destined to be a killer? That is ridiculous.
Use your common sense. We have talked about people, this just doesn't make any, Gerald Ford, Clarence Thomas. It is an insult to those kinds of people to 
Although Jones' objection to the "insult" comment was sustained, his motion for mistrial was denied.
It is clear from the record that the State made the Ford/Thomas comparison as part of its argument that Dr. Toomer's testimony that Jones was suffering from extreme mental or emotional disturbance because he had been raised in a foster family was "ridiculous." Considered in context, we agree with the trial court that although the "insult" comment was "unfortunate" it was not so inflammatory or prejudicial as to warrant a mistrial.
Jones next contends that a comment concerning a threat Jones made to a security guard during a prior robbery was improper because it had "nothing to do with a statutory aggravating circumstance." During testimony concerning Jones' prior conviction of *353 armed robbery it was revealed that Jones threatened to "get" the security guard who apprehended him after he fled from the school where the robbery was committed. In closing argument, the prosecutor referred to the fact that Jones threatened the security guard. Jones' objection to this comment was sustained but his motion for mistrial was denied.
A review of the record reveals that the reference to the threat was not urged as a nonstatutory aggravating factor. Rather, the State attempted to use the fact that Jones threatened the guard to refute Dr. Toomer's contention that Jones was under extreme mental or emotional disturbance at the time of the prior violent felony. Taken in context, this was a proper comment on the evidence and was in no way so prejudicial as to warrant a mistrial.
The remainder of the challenged comments likewise either have been mischaracterized or were proper comments on the evidence. Moreover, our review of the record reveals that even if the challenged comments could be considered improper, none of them, either individually or collectively, so undermined the jury's recommendation as to warrant a new sentencing proceeding. Davis v. State, 604 So.2d 794, 797 (Fla. 1992).
Finally, we have compared this case with other death penalty cases and conclude that death is proportionately warranted. See, e.g., Green v. State, 641 So.2d 391 (Fla. 1994) (death proportionate where defendant had been convicted of prior violent felony, murder was committed while defendant was engaged in kidnapping, and murder was committed for pecuniary gain and no mitigating factors were found); Wyatt (death proper where facts that defendant was under sentence of imprisonment at the time of murder, defendant had been convicted of a prior violent felony, and murder was committed during the course of a robbery were found in aggravation and fact that defendant was raised in a broken home by stepfather while his mentally ill mother was in and out of mental hospitals was found in mitigation); Brown v. State, 644 So.2d 52 (Fla. 1994) (death proper where defendant had been previously convicted of violent felony and the murder was committed during the course of a robbery and no mitigation was found). Accordingly, having found no reversible error, we affirm the convictions and sentences.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN, HARDING and WELLS, JJ., concur.
ANSTEAD, J., concurs specially with an opinion, in which SHAW and KOGAN, JJ., concur.
ANSTEAD, Judge, specially concurring.
While I concur in the majority opinion in all respects, I would adopt a requirement, with prospective application, that, when applicable, trial courts henceforth give a standard limiting instruction similar to that set out in Castro v. State, 597 So.2d 259 (Fla. 1992).
In Castro, we held that, when requested, a trial court should advise the jury in the penalty proceedings of a capital case that the state may not rely upon a single aspect of the offense to establish more than a single aggravating circumstance. In Castro, we stated:
Although we have resolved Castro's case on the first issue, we address Castro's second point in order to clarify the holding in Suarez v. State, 481 So.2d 1201 (Fla. 1985), cert. denied, 476 U.S. 1178, 106 S.Ct. 2908, 90 L.Ed.2d 994 (1986). Castro argues that his death sentence is unconstitutional because the jury was permitted to consider duplicative aggravating circumstances, to wit, that the murder was committed for pecuniary gain and that murder occurred during the commission of a robbery. We have previously held that a trial court's finding of both of these circumstances constitutes improper doubling. E.g., Provence v. State, 337 So.2d 783 (Fla. 1976), cert. denied, 431 U.S. 969, 97 S.Ct. 2929, 53 L.Ed.2d 1065 (1977); White v. State, 403 So.2d 331 (Fla. 1981), cert. denied, 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1412 (1983). In Suarez, however, we found that it was not reversible error when the jury was instructed on both factors as long as the trial court did not give *354 the factors double weight in its sentencing order. 481 So.2d at 1209. In the present case, defense counsel objected to the jury's being instructed on both factors and also requested the following special instruction be given:
The state may not rely upon a single aspect of the offense to establish more than a single aggravating circumstance. Therefore, if you find that two or more of the aggravating circumstances are supported by a single aspect of the offense, you may only consider that as supporting a single aggravating circumstance. For example, the commission of a capital felony during the course of a robbery and done for pecuniary gain relates to the same aspect of the offense and may be considered as being only a single aggravating circumstance.
The court refused the instruction on the authority of Suarez. However, Suarez did not involve a limiting instruction, but only the question of whether in that case it was reversible error when the jury was instructed on both aggravating factors. When applicable, the jury may be instructed on "doubled" aggravating factors since it may find one but not the other to exist. A limiting instruction properly advises the jury that should it find both aggravating factors present, it must consider the two factors as one, and thus the instruction should have been given.
597 So.2d at 261.
Because of the importance of the jury's role in sentencing in capital cases, jurors should be as fully informed as possible about their duties and responsibilities. Just as we have "instructed" sentencing courts that doubling is improper, so should juries charged with the responsibility for making a sentencing recommendation be similarly instructed.
SHAW and KOGAN, JJ., concur.
NOTES
[1] Section 921.141(5)(a), (b), (d), & (f), Florida Statutes (1993), respectively.