609 So.2d 513 (1992)
Ronald Wayne CLARK, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 77156.
Supreme Court of Florida.
October 22, 1992.
Rehearing Denied January 13, 1993.
Nancy A. Daniels, Public Defender and W.C. McLain, Asst. Public Defender, Tallahassee, for appellant.
*514 Robert A. Butterworth, Atty. Gen., and Carolyn M. Snurkowski and Richard B. Martell, Asst. Attys. Gen., Tallahassee, for appellee.
PER CURIAM.
Ronald Wayne Clark appeals his conviction of first-degree murder and sentence of death. We have jurisdiction under article V, section 3(b)(1) of the Florida Constitution.
On October 29, 1989, twenty-one-year-old Ronald Clark traveled to Jacksonville to meet a friend, David Hatch, who was working on a fishing boat docked in Trout River. While visiting with Hatch, Clark was introduced to another employee on the boat, Charles Carter, the victim in this case. Clark had previously tried to obtain a job on the boat, but was unsuccessful.
After drinking for a while on the boat and at a nearby lounge, Clark and Hatch drove to Nassau County, bought more beer, and continued drinking and riding around. Another of Clark's friends, Brian Corbett, joined the two men after their car got stuck on a dirt road, and the three returned to the fishing boat in Jacksonville and drank more beer. Carter then joined the group, and they drove back to Nassau County, stopping again to purchase beer.
After driving around for a while, Clark stopped the car on a dirt road and stated that he needed to relieve himself. Everyone got out of the car. Clark exited the car with a sawed-off single-shot shotgun, pushed Hatch out of the way, and shot Carter in the chest from a distance of about ten feet. Immediately thereafter, Clark reloaded the gun, approached Carter, and fired the fatal shot into Carter's mouth from a distance of two or three feet. Clark then dragged the body to a ditch after removing Carter's wallet, money, and boots. The next day, Clark went to the fishing boat to claim Carter's job.
Clark was convicted of first-degree murder, and the jury recommended a death sentence by a vote of ten to two. The trial court followed the jury's recommendation, finding four aggravating circumstances and no mitigating circumstances.
All of Clark's arguments on appeal relate to the penalty phase of his trial. However, we have reviewed the record, and we conclude that the evidence clearly supports the judgment of guilt for first-degree murder.
In his first argument, Clark contends that the trial court's findings on aggravation were improper. The court found the following four aggravating circumstances to be present in this case: (1) the murder was committed during a robbery; (2) the murder was committed for pecuniary gain; (3) the murder was especially heinous, atrocious, or cruel; and (4) the murder was cold, calculated, and premeditated. § 921.141(5)(d), (f), (h), (i), Fla. Stat. (1989).
Clark first contends that the trial court improperly found the murder to be heinous, atrocious, or cruel. We have defined this aggravating factor to be applicable where the murder is "accompanied by such additional acts as to set the crime apart from the norm of capital felonies  the conscienceless or pitiless crime which is unnecessarily torturous to the victim." State v. Dixon, 283 So.2d 1, 9 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974). Under this test, instantaneous shooting deaths are generally held not to be heinous, atrocious, or cruel. See, e.g., Gorham v. State, 454 So.2d 556, 559 (Fla. 1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 941, 83 L.Ed.2d 953 (1985). The State argues that this shooting is distinguishable, however, because Carter was probably conscious between the time the first shot was fired and the time he was killed by the second shot, and therefore was probably aware of his impending death. However, the evidence indicates that the fatal shot came almost immediately after the initial shot to the chest. The fact that it took more than one shot to kill this victim does not set this crime apart from the norm of capital felonies, and there is no indication that the crime was committed in such a manner as to cause unnecessary and prolonged suffering to the victim. We therefore agree with Clark that this aggravating circumstance is not present in this case. See Brown v. State, 526 So.2d 903, 906-07 *515 (Fla.) (heinous, atrocious, or cruel aggravator improperly found where victim shot in the arm, begged for his life, then shot in the head), cert. denied, 488 U.S. 944, 109 S.Ct. 371, 102 L.Ed.2d 361 (1988); Lewis v. State 377 So.2d 640, 646 (Fla. 1979) (heinous, atrocious, or cruel aggravator improperly found where victim shot in the chest, attempted to flee, then shot in the back).
Clark next contends that the trial court erred in finding that the murder was cold, calculated, and premeditated. To establish the heightened premeditation necessary for a finding of this aggravating factor, the State must demonstrate that the defendant had a careful plan or prearranged design to kill. Rogers v. State, 511 So.2d 526, 533 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988). In finding this aggravator, the trial court emphasized that Clark told Corbett he drove around in the woods to get his passengers lost, presumably so they could not locate the body. At best, this evidence establishes that Clark decided to murder Carter at some point during the drive. There is no evidence that Clark preplanned the killing before this point or arranged to have Carter accompany the group so that he could be taken to an isolated area and murdered. In fact, it was Hatch, not Clark, who invited Carter along in the first place. We find insufficient evidence to support the finding that this aggravating factor is present here.
Clark also contends that the trial court erred in finding that the murder was committed during a robbery. While there is no question that Clark took Carter's money and boots from his body after his death, this action was only incidental to the killing, not a primary motive for it. No one testified that Clark planned to rob Carter, that Clark needed money or coveted Carter's boots, or that Clark was even aware that Carter had any money. There is no evidence that taking these items was anything but an afterthought. Accordingly, we find that the State has failed to prove the existence of this aggravating factor beyond a reasonable doubt. See Jones v. State, 580 So.2d 143, 146 (Fla.), cert. denied, ___ U.S. ___, 112 S.Ct. 221, 116 L.Ed.2d 179 (1991); Parker v. State, 458 So.2d 750, 754 (Fla. 1984), cert. denied, 470 U.S. 1088, 105 S.Ct. 1855, 85 L.Ed.2d 152 (1985).
Finally, Clark contends that the trial court erred in finding that the murder was committed for pecuniary gain. To establish this aggravator, the State must prove a pecuniary motivation for the murder. Hill v. State, 549 So.2d 179, 183 (Fla. 1989); Scull v. State, 533 So.2d 1137, 1142 (Fla. 1988), cert. denied, 490 U.S. 1037, 109 S.Ct. 1937, 104 L.Ed.2d 408 (1989). Here, the trial court relied on Clark's statement, upon returning to the car after the killing, that "I guess I got the job now," and on the fact that Clark went to the fishing boat the next morning, knowing Carter was not going to show up, and claimed Carter's job. We agree with the court's finding that obtaining Carter's job was Clark's motivation for the murder. While this is not a typical scenario, we also agree that killing for the purpose of obtaining the victim's paying job does constitute commission of a murder for pecuniary gain, and we uphold the trial court's finding that this aggravating circumstance is present in this case. Cf. Craig v. State, 510 So.2d 857, 868 (Fla. 1987) (finding pecuniary gain where defendant killed victims in order to protect cattle rustling scheme, to gain control of cattle ranch, and to prevent victim from taking defendant's job at the ranch), cert. denied, 484 U.S. 1020, 108 S.Ct. 732, 98 L.Ed.2d 680 (1988); Parker, 458 So.2d at 754 (finding pecuniary gain where victim murdered so defendant could establish a reputation as a collector of debts to solidify his drug-dealing network).
In mitigation, Clark presented evidence of his alcohol abuse and emotional disturbance, as well as his abused childhood. Much of this evidence was uncontroverted. The trial court rejected the statutory mitigating circumstances concerning mental impairments, finding that Clark did not suffer from extreme mental or emotional disturbance and that his capacity to appreciate the criminality of his conduct or *516 to conform his conduct to the requirements of the law was not substantially impaired. However, the court did acknowledge that the evidence showed that Clark was a disturbed person, that his judgment may have been impaired to some extent, that he drank an excessive amount of alcohol on the day of the murder, and that he was abused as a child.
Although there was some variation in testimony as to the specific amount of alcohol consumed by Clark on the day of the crime, all witnesses agreed that the amount was substantial. Clark began drinking early that day and continued drinking throughout the day. In addition, Clark testified that he smoked crack cocaine that day and took several of his father's antipsychotic prescription pills, although this testimony was not corroborated.
Apparently, spending the entire day drinking was typical for Clark, as he presented evidence of an extensive history of substance abuse. Lay and expert witnesses testified that Clark began using alcohol at the age of six and was drinking regularly by the age of eleven or twelve. Clark also frequently used LSD, PCP, cocaine, and various other drugs. As a result of his alcohol and drug abuse, Clark dropped out of high school to avoid being expelled.
Clark was emotionally and sexually abused as a child. His parents were alcoholics who separated when Clark was five or six. Clark was sent back and forth from one parent to another. He witnessed physical abuse and violence between his parents, and he was sexually abused by his mother's lesbian lover.
In 1984, Clark was evaluated by a psychologist, who noted that Clark was very disturbed and needed intense treatment to prevent him from acting in a more brutal and violent way. All experts who evaluated Clark prior to trial found him to be chemically dependent.
While we find no error in the trial court's rejection of this evidence as statutory mitigation, especially in light of the defense expert's own testimony that the statutory mitigating circumstances were inapplicable here, this evidence does constitute strong nonstatutory mitigation. The death penalty is reserved for "the most aggravated and unmitigated of most serious crimes." Dixon, 283 So.2d at 7. Having found that only one valid aggravating circumstance exists, and having considered the mitigation established by the record, we find that this is not such a crime. The sentence of death in this case is disproportionate when compared with other capital cases where this Court has vacated the death sentence and imposed life imprisonment. See, e.g., McKinney v. State, 579 So.2d 80, 85 (Fla. 1991); Caruthers v. State, 465 So.2d 496, 499 (Fla. 1985); Rembert v. State, 445 So.2d 337, 340 (Fla. 1984).
Given our resolution of this issue, it is unnecessary for us to address Clark's remaining claims. Accordingly, we affirm Clark's conviction for first-degree murder but reduce his death sentence to life imprisonment without eligibility for parole for twenty-five years, less any jail time served.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.