613 So.2d 412 (1992)
Ronald Wayne CLARK, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 77553.
Supreme Court of Florida.
December 24, 1992.
Rehearing Denied March 4, 1993.
Nancy A. Daniels, Public Defender and W.C. McLain, Asst. Public Defender, Second Judicial Circuit, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Mark C. Menser, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Ronald Clark appeals his conviction of first-degree murder and sentence of death. We have jurisdiction, article V, section 3(b)(1), Florida Constitution, and affirm both the conviction and sentence.
On the afternoon of January 13, 1990 two teenagers walking down a dirt road in rural Duval County found a crowbar, some broken false teeth, a bloody shirt, and some *413 blank checks, with the name Ronald Willis printed on them, that also had blood on them. One of the boys returned home and told his mother what they had found, and she called the sheriff's office. Also on the 13th Willis' mother called his ex-wife to see if she knew of Willis' whereabouts. The ex-wife did not, and she and her sister began driving around looking for him. They found Willis' truck at a motel, parked near it, and started calling his name. A small child was in the truck, and a man identifying himself as the child's father removed the child and pointed out Ronald Clark and John Hatch as the people who had been driving the truck. The ex-wife took the keys and locked the truck while her sister went to telephone the police. Clark approached the ex-wife, grabbed her, and tried to take the keys. When she kicked him, he ran away. The sister ran after Clark and noticed that he was wearing Willis' cowboy boots. Clark and Hatch ran off before the police arrived. They had been identified, however, and the police arrested Hatch in Nassau County on January 20, 1990.
Hatch described the events of January 12 to 13 as follows. When he arrived home after work on January 12, Clark was at his house. They decided to hitchhike to Jacksonville to shoot pool. Along the way they shot at signs and beer bottles with a pistol Hatch had stolen from a house he had been remodeling. Willis stopped to give them a ride, and, during the ride, Clark whispered to Hatch that he was going to steal the truck. When Hatch asked Willis to stop the truck, both he and Clark got out of the truck, and Clark, who had the stolen pistol, shot Willis' seven or eight times. Clark shoved Willis' body to the center of the seat, Hatch got in the passenger's seat, and Clark drove to a more secluded area. Clark pulled Willis' body from the truck, during which Willis' shirt came off. Clark then took Willis' wallet and boots and pushed his body into a ditch. Clark and Hatch went to a restaurant and to Hatch's ex-wife's apartment complex, but later returned to where they had left the body. Taking the body with them, they went to Clark's father's house and got a rope and several cinder blocks. They then drove to the Nassau County Sound Bridge, tied the blocks to the body, and dumped it into the water. After driving around some more, they went to an acquaintance's house to buy drugs. The acquaintance went with them to the motel where Willis' ex-wife and her sister found the truck. Hatch and Clark left the state, eventually winding up in South Carolina. Hatch returned to Nassau County, where he was arrested. South Carolina authorities arrested Clark on February 7, 1990 and returned him to Florida.
The state indicted Clark for first-degree murder and armed robbery and tried him on those charges in January 1991. Hatch, in exchange for a twenty-five-year sentence, testified against Clark. Clark testified on his own behalf that Hatch killed Willis. The jury convicted Clark of armed robbery and felony murder. During the penalty phase, Clark refused to allow his attorney to present any mitigating evidence. The jury recommended that Clark be sentenced to death. On February 20 both sides argued their views on sentencing with defense counsel arguing that Clark should be sentenced to life imprisonment rather than death. The court disagreed, however, and sentenced Clark to death two days later.
Clark raises no challenges to the guilt phase of his trial, but we find that the record contains competent, substantial evidence to support his conviction. We therefore affirm his conviction of first-degree murder.
Clark argues that the trial court erred in allowing him to waive the presentation of mitigating evidence. We have upheld the right of similarly situated defendants to refuse to participate in the sentencing proceeding. E.g., Durocher v. State, 604 So.2d 810 (Fla. 1992); Pettit v. State, 591 So.2d 618 (Fla.), cert. denied, ___ U.S. ___, 113 S.Ct. 110, 121 L.Ed.2d 68 (1992); Anderson v. State, 574 So.2d 87 (Fla.), cert. denied, ___ U.S. ___, 112 S.Ct. 114, 116 L.Ed.2d 83 (1991); Hamblen v. State, 527 So.2d 800 (Fla. 1988). Contrary to Clark's contention, Klokoc v. State, 589 So.2d 219 (Fla. 1991), in which we *414 refused to dismiss the mandatory appeal and directed Klokoc's counsel to prosecute that appeal, does not control this case nor does it require that we recede from Hamblen and the other cases when defendants have waived introducing mitigating evidence.
When the state finished its penalty presentation, defense counsel announced that Clark did not want to put on any evidence in mitigation. Counsel told the court that Clark had been examined by three mental health experts who could testify for him and that Clark knew that he could testify on his own behalf, but that Clark wanted nothing more done. The court then talked with Clark about what forgoing the presentation of mitigating evidence entailed, and Clark responded: "I don't want the jury to know nothing." The record shows that Clark understood the consequences of his decision and that he voluntarily and knowingly waived the presentation of mitigating evidence. Therefore, we hold this issue to be without merit.
Even though Clark refused to allow his counsel to introduce mitigating evidence, counsel argued that the jury should not recommend sentencing Clark to death and that Clark's age and the disparate treatment received by Hatch mitigated this murder. The court instructed the jury that the aggravators it could consider were prior conviction of violent felony, felony murder in the course of a robbery, and committed for pecuniary gain, but, if the jury found the second and third aggravators, they should be merged and considered as a single aggravator. The court instructed that the mitigators that could be considered were Clark's character and the circumstances of the crime and Clark's age. After the jury recommended death, the court set the actual sentencing for February 20, 1991.
On that date the court gave the parties the opportunity to present aggravating or mitigating evidence. Defense counsel asked the court to consider three mental health experts' reports and mentioned Clark's alleged substance abuse, proportionality, and Hatch's sentence. The court asked Clark if he wanted to say anything, and Clark responded that he did not kill the victim. The state argued that the aggravators instructed on applied, merging felony murder and pecuniary gain as one, asked the court to look at the PSI to rebut the doctors' reports, and argued there was no proof of intoxication and that death was proportionate. The trial court found that all three aggravators and no mitigators had been established.
Now, Clark argues that the court committed reversible error by finding felony murder and pecuniary gain as separate aggravators. It is difficult to believe that the court weighed these aggravators separately after correctly instructing the jury to merge them. Even if they were considered separately, the error would be harmless because there remain two valid aggravators and no mitigators. After carefully scrutinizing this case, we are convinced beyond a reasonable doubt that the court would have imposed the death sentence if it had found a combination of two total aggravators instead of listing three aggravators separately. Durocher v. State, 596 So.2d 997 (Fla. 1992); Capehart v. State, 583 So.2d 1009 (Fla. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 955, 117 L.Ed.2d 122 (1992). Thus, there is no possibility that any double consideration affected the sentence, and any error was harmless.
Clark also argues that the trial court erred by failing to consider the mitigating evidence properly and to find that several mitigators had been established. The record is clear, however, that the trial court considered the mitigating evidence, including the psychiatric reports as noted in the sentencing order. The trial court conscientiously performed its duty and decided that no mitigators had been established. See Sireci v. State, 587 So.2d 450 (Fla. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1500, 117 L.Ed.2d 639 (1992). The record contains competent, substantial evidence supporting the court's conclusion that Clark's death sentence is appropriate. See Ponticelli v. State, 593 So.2d 483 (Fla. 1991), reversed on other grounds, ___ U.S. ___, 113 S.Ct. 32, 121 L.Ed.2d 5 (1992).
*415 At the penalty proceeding, the state had a detective testify about Clark's prior conviction in Nassau County of first-degree murder. His testimony included the gist of other witnesses' testimony in that trial, and Clark now argues that this constituted in admissible hearsay because he had no fair opportunity to rebut it. Subsection 921.141(1), Florida Statutes (1989), allows the introduction of hearsay in penalty proceedings, "provided the defendant is accorded a fair opportunity to rebut any hearsay statements." Clark had the opportunity to rebut any hearsay presented by the state. That he did not or could not rebut this testimony does not make it inadmissible. Clark has shown no abuse of the trial court's discretion in admitting this testimony. Cf. Chandler v. State, 534 So.2d 701 (Fla. 1988), cert. denied, 490 U.S. 1075, 109 S.Ct. 2089, 104 L.Ed.2d 652 (1989).
As his final point, Clark argues that the death sentence is disproportionate for this murder. We disagree. There are two valid aggravators, including a prior conviction of first-degree murder, and no mitigators. The cases he cites to support his argument are distinguishable, and his death sentence is not disproportionate to other cases where we have upheld death sentences. E.g., Wickham v. State, 593 So.2d 191 (Fla. 1991) (robbery and murder of good samaritan motorist, strong aggravators, weak mitigation), cert. denied, ___ U.S. ___, 112 S.Ct. 3003, 120 L.Ed.2d 878 (1992); Freeman v. State, 563 So.2d 73 (Fla. 1990) (first-degree felony murder committed during a burglary, prior murder conviction in aggravation, weak mitigation), cert. denied, ___ U.S. ___, 111 S.Ct. 2910, 115 L.Ed.2d 1073 (1991). Therefore, we affirm Clark's conviction of first-degree murder and sentence of death.
It is so ordered.
OVERTON, McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
BARKETT, C.J., concurs as to the convictions, and concurs specially with an opinion as to the sentence.
BARKETT, Chief Justice, specially concurring.
I agree that Hamblen v. State, 527 So.2d 800 (Fla. 1988), precludes relief on the issue of presenting mitigating evidence, but continue to adhere to the views I expressed therein. 527 So.2d at 806 (Barkett, J., dissenting).