PER CURIAM.
 

 This case is before the Court on appeal from an order denying a motion to vacate a judgment of conviction of first-degree murder and a sentence of death under Florida Rule of Criminal Procedure 3.851. Because the order concerns postconviction relief from a capital conviction for which a sentence of death was imposed, this Court has jurisdiction of the appeal under article V, section 3(b)(1), Florida Constitution. For the reasons stated below, we affirm the postconviction court’s order denying relief.
 

 FACTS AND PROCEDURAL HISTORY
 

 The facts of the underlying case are set out in this Court’s opinion on Clark’s direct appeal and are as follows:
 

 On the afternoon of January 13, 1990 two teenagers walking down a dirt road in rural Duval County found a crowbar, some broken false teeth, a bloody shirt, and some blank checks, with the name Ronald Willis printed on them, that also had blood on them. One of the boys returned home and told his mother what they had found, and she called the sheriffs office. Also on the 13th Willis’ mother called his ex-wife to see if she knew of Willis’ whereabouts. The ex-wife did not, and she and her sister began driving around looking for him. They found Willis’ truck at a motel, parked near it, and started calling his name. A small child was in the truck, and a man identifying himself as the child’s father removed the child and pointed out Ronald Clark and John Hatch as the people who had been driving the truck. The ex-wife took the keys and locked the truck while her sister went to telephone the police. Clark approached the ex-wife, grabbed her, and tried to take the keys. When she kicked him, he ran away. The sister ran after Clark and noticed that he was wearing Willis’ cowboy boots. Clark and Hatch ran off before the police arrived. They had been identified, however, and the police arrested Hatch in Nassau County on January 20, 1990.
 

 Hatch described the events of January 12 to 13 as follows. When he arrived home after work on January 12, Clark was at his house. They decided to hitchhike to Jacksonville to shoot pool. Along the way they shot at signs and beer bottles with a pistol Hatch had stolen from a house he had been remodeling. Willis stopped to give them a ride, and, during the ride, Clark whispered to Hatch that he was going to steal the truck. When Hatch asked Wil
 
 *884
 
 lis to stop the truck, both he and Clark got out of the truck, and Clark, who had the stolen pistol, shot Willis seven or eight times. Clark shoved Willis’ body to the center of the seat, Hatch got in the passenger’s seat, and Clark drove to a more secluded area. Clark pulled Willis’ body from the truck, during which Willis’ shirt came off. Clark then took Willis’ wallet and boots and pushed his body into a ditch. Clark and Hatch went to a restaurant and to Hatch’s ex-wife’s apartment complex, but later returned to where they had left the body. Taking the body with them, they went to Clark’s father’s house and got a rope and several cinder blocks. They then drove to the Nassau County Sound Bridge, tied the blocks to the body, and dumped it into the water. After driving around some more, they went to an acquaintance’s house to buy drugs. The acquaintance went with them to the motel where Willis’ ex-wife and her sister found the truck. Hatch and Clark left the state, eventually winding up in South Carolina. Hatch returned to Nassau County, where he was arrested. South Carolina authorities arrested Clark on February 7, 1990 and returned him to Florida.
 

 The state indicted Clark for first-degree murder and armed robbery and tried him on those charges in January 1991. Hatch, in exchange for a twenty-five-year sentence, testified against Clark. Clark testified on his own behalf that Hatch killed Willis. The jury convicted Clark of armed robbery and felony murder. During the penalty phase, Clark refused to allow his attorney to present any mitigating evidence. The jury recommended that Clark be sentenced to death. On February 20 both sides argued their views on sentencing with defense counsel arguing that Clark should be sentenced to life imprisonment rather than death. The court disagreed, however, and sentenced Clark to death two days later.
 

 Clark v. State,
 
 613 So.2d 412, 412-13 (Fla.1992). The jury voted eleven to one to recommend death. The trial judge sentenced Clark to death after finding no mitigating and three aggravating circumstances.
 
 [1]
 
 This Court affirmed Clark’s conviction and sentence.
 
 Id.
 
 at 412.
 
 [2]
 
 Additionally, the Court found Clark’s challenge to his mitigation waiver without merit after finding that Clark had knowingly and intelligently waived his right to present mitigation.
 
 Id.
 
 at 414 (“The record shows that Clark understood the consequences of his decision and that he voluntarily and knowingly waived the presentation of mitigating evidence. Therefore, we hold this issue to be without merit.”).
 

 Clark first filed a motion to vacate his sentence pursuant to Florida Rule of Criminal Procedure 3.850 on November 16, 1994. Clark filed supplemental and amended motions, ending with his Second
 
 *885
 
 Amended Motion to Vacate Judgment of Conviction and Sentence and Supplement to Amended Motion filed January 31, 2006.
 
 [3]
 

 Prior to Clark’s conviction in Duval County, he was tried and convicted in Nassau County for the murder of Charles Carter.
 
 Clark v. State,
 
 609 So.2d 513 (Fla.1992). Judge Henry Davis, then a criminal defense attorney, represented Clark in both cases. In the Nassau County case, the evidence presented demonstrated that Clark led a troubled childhood.
 
 Id.
 
 at 515-16. Clark’s parents were described as alcoholics, and his father was a drug dealer. Clark witnessed physical abuse between his parents. Clark began drinking at age twelve, and although the amount consumed on the day of the murder could not be determined, it was excessive. The record also showed Clark had ingested a controlled substance. After psychological evaluation, Clark was determined competent to stand trial. Clark admitted during an evaluation in 1986 that he enjoyed hurting people and derived pleasure from watching blood spatter. The trial judge considered and rejected the following mitigation: (1) lack of significant prior criminal history, (2) extreme mental or emotional disturbance, (3) that the victim was a participant or consented to the act, (4) that the defendant was a minor participant, (5) that he acted under extreme duress or substantial domination, (6) that he had diminished capacity, and (7) Clark’s age at
 
 *886
 
 time of crime. Additionally, the trial judge stated:
 

 There is no doubt from the record herein that the Defendant led a hard and difficult life. His early childhood experiences of being abused by his mother’s lesbian lover or having to witness physical abuse and violence between his parents was unfortunate. However, there is nothing in his background that would serve to mitigate the murder herein.
 

 Based on this, defense counsel Davis determined the mitigating evidence “cut both ways” and, along with Clark, decided not to present mitigation at the Duval County trial. Clark asserts that the mitigation presented in the Nassau County case was virtually identical to what would have been presented in the Duval County case.
 

 ISSUES
 

 Clark appeals the denial of postconviction relief to this Court raising three issues. He contends (1) trial counsel was ineffective for failing to investigate and present evidence that Hatch was the shooter; (2) trial counsel was ineffective for failing to present mitigation at the penalty phase of his trial or, alternatively, for failing to convince Clark that he needed to present mitigation; and (8) there is newly discovered evidence that Hatch confessed to being the shooter in the Duval County murder, which Clark claims entitles him to a new trial. For the reasons expressed below, we affirm the posteonviction court’s denial of Clark’s 8.851 motion.
 

 ANALYSIS
 

 Ineffective Assistance of Counsel
 

 As it relates to ineffective assistance of counsel, Clark first alleges counsel was ineffective for failing to investigate and present evidence that Hatch was the shooter. Next, Clark alleges that counsel was ineffective for failing to present evidence in support of mitigation. We find both these arguments without merit.
 

 Generally, this Court’s standard of review following a denial of a postcon-viction claim where the trial court has conducted an evidentiary hearing affords deference to the trial court’s factual findings. “[A]s long as the trial court’s findings are supported by competent substantial evidence, this Court will not ‘substitute its judgment for that of the trial court on questions of fact, likewise of the credibility of the witnesses as well as the weight to be given to the evidence by the trial court.’ ”
 
 McLin v. State,
 
 827 So.2d 948, 954 n. 4 (Fla.2002) (quoting
 
 Blanco v. State,
 
 702 So.2d 1250, 1252 (Fla.1997)). However, the circuit court’s legal conclusions are reviewed de novo.
 
 See Sochor v. State,
 
 883 So.2d 766, 772 (Fla.2004).
 

 Relating to Clark’s first claim, following the United States Supreme Court’s decision in
 
 Strickland, v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), this Court has held that for ineffective assistance of counsel claims to be successful, two requirements must be satisfied: (1) the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards; and (2) the clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined.
 
 Maxwell v. Wainwright,
 
 490 So.2d 927, 932 (Fla.1986).
 

 As to the first prong, the defendant must establish that “counsel made errors so serious that counsel was not functioning as the ‘counsel’ guaranteed the defendant by the Sixth Amendment.”
 
 Strickland,
 
 466 U.S. at 687, 104 S.Ct. 2052;
 
 see also Cherry v. State,
 
 659 So.2d 1069,
 
 *887
 
 1072 (Fla.1995). For the second prong, the reviewing court must determine whether there is a reasonable probability that, but for the deficiency, the result of the proceeding would have been different.
 
 See Strickland,
 
 466 U.S. at 694, 104 S.Ct. 2052. “A reasonable probability is a probability sufficient to undermine confidence in the outcome.”
 
 Id.
 
 “Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.”
 
 Id.
 
 at 687, 104 S.Ct. 2052.
 

 Additionally, there is a strong presumption that trial counsel’s performance was not ineffective.
 
 See id.
 
 at 690, 104 S.Ct. 2052. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time.
 
 See id.
 
 at 689, 104 S.Ct. 2052;
 
 see also Rivera v. Dugger,
 
 629 So.2d 105, 107 (Fla.1993). The defendant carries the burden to “overcome the presumption that, under the circumstances, the challenged action ‘might be considered sound trial strategy.’ ”
 
 Strickland,
 
 466 U.S. at 689, 104 S.Ct. 2052 (quoting
 
 Michel v. Louisiana,
 
 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). In
 
 Occhicone v. State,
 
 768 So.2d 1037, 1048 (Fla.2000), this Court held that “strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel’s decision was reasonable under the norms of professional conduct.”
 

 With respect to the investigation and presentation of mitigation evidence, the United States Supreme Court observed in
 
 Wiggins v. Smith,
 
 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), that
 
 “Strickland
 
 does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing. Nor does
 
 Strickland
 
 require defense counsel to present mitigating evidence at sentencing in every case.”
 
 Wiggins,
 
 539 U.S. at 533, 123 S.Ct. 2527. Rather, in deciding whether trial counsel exercised reasonable professional judgment with regard to the investigation and presentation of mitigation evidence, a reviewing court must focus on whether the investigation resulting in counsel’s decision not to introduce certain mitigation evidence was itself reasonable.
 
 Id.
 
 at 523, 123 S.Ct. 2527;
 
 Strickland,
 
 466 U.S. at 690-91 104 S.Ct. 2052. When making this assessment, “a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further.”
 
 Wiggins,
 
 539 U.S. at 527, 123 S.Ct. 2527.
 

 Regarding the waiver of the right to present mitigating evidence, “[w]e have upheld the right of similarly situated defendants to refuse to participate in the sentencing proceeding.”
 
 Clark,
 
 613 So.2d at 413 (citing
 
 Durocher v. State,
 
 604 So.2d 810 (Fla.1992);
 
 Pettit v. State,
 
 591 So.2d 618 (Fla.1992);
 
 Anderson v. State,
 
 574 So.2d 87 (Fla.1991);
 
 Hamblen v. State,
 
 527 So.2d 800 (Fla.1988)). Such waiver must be “knowingly, voluntarily, and intelligently made.”
 
 Deaton v. Dugger,
 
 635 So.2d 4, 8 (Fla.1993) (citing
 
 Henry v. State,
 
 613 So.2d 429 (Fla.1992)).
 

 In its September 2007 order denying relief, the postconviction court found:
 

 Initially this Court notes that the Defendant, having raised this claim on direct appeal, is procedurally barred from raising it again in a motion for post-conviction relief. Moreover, the record supports that the trial court adequately
 
 *888
 
 inquired into the Defendant’s decision to waive mitigation.
 

 At the evidentiary hearing, trial counsel Davis, specifically addressed the Defendant’s ineffective assistance of counsel claims. Davis testified that it was his trial strategy not to present mitigation evidence from the Nassau County case in the Duval County case because the mitigation evidence “cut both ways.” One example of mitigation evidence cutting both ways, was that the Defendant would kill animals for the sport of it, and Davis could tell from the reaction of the Nassau County jurors that the testimony was having the opposite effect of its intended purpose. He also explained that because the Nassau County case was stronger than the Duval County case, neither he nor the Defendant thought it would be beneficial to present the mitigation evidence in the weaker case when it did not work in a stronger case. Davis testified that had the Defendant wanted to present mitigation evidence, he would have presented it to the jury.
 

 As it relates to the claim that counsel was ineffective during the guilt phase, the postconviction court found:
 

 To the extent the Defendant claims that Davis should have contacted or presented witnesses, the Defendant’s claim is denied pursuant to
 
 Nelson v. State,
 
 875 So.2d 579, 583-84 (Fla.2004), as the Defendant’s claim in facially insufficient. To the extent the Defendant claims an investigator should have been hired, this claim must also be denied.... Davis testified that he hired an investigator to help him find witnesses....
 

 The postconviction court also found that Clark did not establish that Davis was deficient for failing to present evidence to demonstrate that Hatch was the shooter because “Davis testified that had there been a basis to show that Hatch was the shooter, [he] would have developed that evidence.”
 

 Finally, regarding Clark’s claims that Davis was ineffective for failing to present evidence of Clark’s intoxication and his long-standing substance abuse and for failing to call experts to cast doubt on the physical evidence in the case, the postcon-viction court found that Clark failed to prove these claims.
 

 Clark alleges that counsel was ineffective for failing to investigate and present evidence that Hatch was the shooter. At the evidentiary hearing, Clark presented no evidence to support this claim. Trial counsel cannot be ineffective for failing to present evidence that did not exist at the time of trial.
 
 See, e.g., Pooler v. State,
 
 980 So.2d 460, 465 (Fla.2008);
 
 Bell v. State,
 
 965 So.2d 48, 64 (Fla.2007).
 

 Although Clark alleges that “the record is replete with evidence that Mr. Hatch was the shooter and leader,” the record does not support his allegation. As stated in this Court’s opinion on direct appeal, “the record contains competent, substantial evidence to support [Clark’s] conviction.”
 
 Clark,
 
 613 So.2d at 413. We made this finding even after noting that Clark testified at trial that Hatch was the shooter.
 
 Id.
 
 Thus, Clark’s claim was correctly denied by the postconviction court.
 

 Next, Clark alleges that counsel was ineffective for failing to present mitigation. Clark raised this as claim 7 in his first amended 3.850 motion filed November 1, 1995. In its June 18, 1996, order on Clark’s motion to vacate judgments of conviction and sentence, the post-conviction court found this claim to be without merit and undeserving of a hear
 
 *889
 
 ing.
 
 [4]
 
 In this order, the postconvietion court granted an evidentiary hearing on four claims. On June 20, 2003, Clark filed a supplement to the first amended motion to vacate, raising one claim, and on January 31, 2006, filed a second amended motion, raising twenty-one claims. Of these claims, the postconviction court granted an evidentiary hearing on claims 1, 2, and 3, which it stated mirrored the claims for which the court had previously awarded an evidentiary hearing.
 
 [5]
 

 Clark alleges that his counsel was ineffective for failing to present mitigation at the penalty phase of his trial or, alternatively, for failing to convince Clark that he needed to present mitigation. We previously found that Clark made a knowing, intelligent waiver of his right to present mitigation.
 
 Clark,
 
 613 So.2d at 414. Because this claim was raised on direct appeal and found to be without merit, it is procedurally barred from being raised in postconviction proceedings.
 
 See Torres-Arboleda v. Dugger,
 
 636 So.2d 1321, 1323 (Fla.1994) (“Proceedings under rule 3.850 are not to be used as a second appeal; nor is it appropriate to use a different argument to relitigate the same issue.”). Thus, in order to find counsel was deficient for failing to present mitigation, this Court must either find that counsel failed to investigate mitigation or was deficient in some other way prior to advising Clark.
 

 In
 
 Koon v. Dugger,
 
 619 So.2d 246 (Fla.1993), this Court outlined the procedure that must be followed when a defendant waives the presentation of mitigating evidence:
 

 [C]ounsel must inform the court on the record of the defendant’s decision. Counsel must indicate whether, based on his investigation, he reasonably believes there to be mitigating evidence that could be presented and what that evidence would be. The court should then require the defendant to confirm on the record that his counsel has discussed these matters with him, and despite counsel’s recommendation, he wishes to waive presentation of penalty phase evidence.
 

 Id.
 
 at 250;
 
 see also Anderson v. State,
 
 822 So.2d 1261, 1268 (Fla.2002) (quoting
 
 Koon,
 
 619 So.2d at 250)). “Although a defendant may waive mitigation, he cannot do so blindly; counsel must first investigate all avenues and advise the defendant so that the defendant reasonably understands what is being waived and its ramifications and hence is able to make an informed, intelligent decision.”
 
 State v. Lewis,
 
 838 So.2d 1102, 1113 (Fla.2002). As discussed in
 
 Clark,
 
 613 So.2d at 413-14, this Court found that the trial court followed proper procedure and that Clark properly waived his right to present mitigation. In the Duval County trial, both Clark and' his
 
 *890
 
 counsel were aware of the precarious nature of his mitigation. Clark does not allege that counsel failed to investigate possible mitigation or failed to discover mitigation that should have been presented at trial.
 

 In
 
 Lewis,
 
 this Court made it clear that a defendant cannot make a knowing, intelligent waiver where counsel has not had adequate time to prepare mitigation. 838 So.2d at 1113-14. In the present case, counsel not only had time to adequately investigate and prepare mitigation evidence, but had presented the same to another jury in Clark’s Nassau County trial. This Court has previously stated that the holding in
 
 Lewis
 
 is in line with the United States Supreme Court’s decision in
 
 Wiggins:
 
 (“[0]ur principal concern in deciding whether [trial counsel] exercised ‘reasonable professional judgment[t],’ is not whether counsel should have presented a mitigation case. Rather, we focus on whether the investigation supporting counsel’s decision not to introduce mitigating evidence of Wiggins’ background
 
 was itself reasonable.”). State v. Larzelere,
 
 979 So.2d 195, 204 (Fla.2008) (quoting
 
 Wiggins,
 
 539 U.S. at 522-23, 123 S.Ct. 2527).
 

 In
 
 Larzelere,
 
 we agreed with the post-conviction court’s ruling that “Larzelere’s waiver could not have been made knowingly and intelligently because her counsel was unable to adequately advise her regarding potential mitigation,” and that counsel’s performance was deficient because counsel did not sufficiently investigate possible mitigation. 979 So.2d at 203;
 
 see also State v. Pearce,
 
 994 So.2d 1094, 1102-03 (Fla.2008) (finding competent substantial evidence to support the trial court’s finding that counsel did not spend sufficient time to prepare for mitigation prior to Pearce’s waiver).
 

 In
 
 Spann v. State,
 
 985 So.2d 1059 (Fla.2008), we found Spann’s argument that his waiver was involuntary because of his ongoing depression to be without merit.
 
 Id.
 
 at 1072. We found that Spann failed to demonstrate he was depressed at the time he waived his rights to present mitigation where the “only evidence indicating a diagnosis and treatment for depression was Spann’s transfer form from Martin County Jail to Florida State Prison.”
 
 Id.
 
 Further, we noted that while the form indicated Spann was on medication for depression, the diagnosis and treatment occurred after Spann’s trial and at the hearing where Spann waived his rights, he indicated he was not on medication.
 
 Id.
 
 We also found that counsel was not ineffective where counsel investigated possible mitigation and discussed it with Spann before he entered his waiver.
 
 Id.
 

 Also dissimilar is our analysis in
 
 Gill v. State,
 
 14 So.3d 946 (Fla.2009), where the Court considered whether a mentally ill person can enter a knowing, intelligent guilty plea and waive mitigation. In
 
 Gill,
 
 the defendant pleaded guilty and waived sentencing by a jury and the presentation of mitigation.
 
 Id.
 
 at 954. Gill objected when standby counsel attempted to present additional mitigation.
 
 Id.
 
 at 955. The court considered the mitigation available in the records, including Gill’s history of mental illness, before sentencing him to death.
 
 Id.
 
 at 955-58. Ultimately, we affirmed Gill’s conviction and sentence.
 
 Id.
 
 at 967. Despite the clear mental mitigation present in the record, Gill was found competent to enter a knowing, intelligent, and voluntary guilty plea. It can be presumed that his waiver of mitigation was also valid.
 

 Additionally, this is not a case where the trial court did not consider mitigation evidence present in the record. The record establishes that trial counsel presented the
 
 *891
 
 mitigating evidence at the Spencer
 
 [6]
 
 hearing and that the trial court considered the reports from mental health experts in the record.
 

 Even if we allowed Clark to pierce his waiver, he cannot show counsel was deficient. Davis testified that the mitigating evidence collected “cut both ways.” He further testified that both he and Clark agreed it would not be beneficial to present such evidence in the “weaker” case. Because counsel did not fail to investigate mitigation, and because Clark was found competent, Davis cannot be found deficient for his strategy.
 

 Finally, Clark has failed to establish prejudice. The exact same mitigation was presented in the Nassau County trial, which led to the imposition of the death penalty. Although that conviction was overturned by this Court on direct appeal, this Court did not find that the trial court improperly rejected all the mitigation presented. Instead, we overturned the sentence because we found several of the ag-gravators unsupported by the record.
 
 Clark,
 
 609 So.2d at 514-15.
 

 Newly Discovered Evidence
 

 Clark raised this claim at the evidentiary hearing below, to which the State objected both procedurally and on the merits. In its order denying relief, the postconviction court found Clark’s claim “untimely in that the Defendant failed to raise this newly discovered evidence claim within one year of learning of its existence.” The court noted that Clark waited two years to raise the claim. Further, the postconviction court found that Clark “failed to establish that this evidence would have been admissible at [his] trial” and that “Thompson’s
 
 [7]
 
 testimony was not of such nature that it would probably produce an acquittal for the Defendant on retrial, especially in light of Thompson’s credibility issues.”
 

 With respect to a trial court’s ruling on a newly discovered evidence claim following an evidentiary hearing, as long as the court’s findings are supported by competent, substantial evidence, a reviewing court will not “substitute its judgment for that of the trial court on questions of fact, likewise of the credibility of witnesses as well as the weight to be given to the evidence by the trial court,”
 
 Blanco v. State,
 
 702 So.2d 1250, 1252 (Fla.1997) (quoting
 
 Demps v. State,
 
 462 So.2d 1074, 1075 (Fla.1984)), but the court’s application of law to facts is subject to de novo review.
 
 Preston v. State,
 
 970 So.2d 789, 798 (Fla.2007).
 

 This Court has held that two requirements must be met in order for a conviction to be set aside on the basis of newly discovered evidence: (1) to be considered newly discovered, the asserted evidence must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that the defendant or defense counsel could not have known of it by the use of due diligence; and (2) the newly discovered evidence must be of such a nature that it would probably produce an acquittal on retrial.
 
 Jones v. State,
 
 709 So.2d 512, 521 (Fla.1998). To reach the latter conclusion, the trial court is required to consider all newly discovered evidence that would be admissible at trial and then evaluate the
 
 *892
 
 weight of both the newly discovered evidence and the evidence that was introduced at trial.
 
 Id.
 

 Clark alleges newly discovered evidence that Hatch confessed to being the shooter in the Duval County murder for which Clark was convicted. Because Clark failed to raise this claim within one year of discovering it and, in fact, failed to raise this claim in his pleadings at all, this claim is denied as procedurally barred.
 

 Clark did not raise this allegation in any of his numerous pleadings below. Instead, this claim was raised at the evidentiary hearing over the State’s objection. The court noted it would address Clark’s motion to “conform the pleadings to the evidence” in its order.
 
 [8]
 

 Claims of newly discovered evidence must be raised within one year of the time of discovery. Fla. R.Crim. P. 3.851(d)(2)(A);
 
 Glock v. Moore,
 
 776 So.2d 243, 251 (Fla.2001). Here, Clark acknowledges that he became aware of Thompson’s information in 2005. Therefore, this claim, “filed” in 2007, was not filed timely.
 

 Finally, even if the Court accepts Clark’s claim as timely filed, Clark cannot establish that the evidence, if presented at a new trial, would probably produce an acquittal. Thompson testified that Hatch admitted he shot someone after a drug deal gone bad, that Hatch had testified against Clark to save his own life, that the victim owed one of them money and had pulled a gun on them, and that Hatch had thrown the victim’s body in the canal. Thompson did not testify regarding the name of the victim, the time of the murder, or any other information that would clearly exonerate Clark in the murder. The information alleged to have been provided by Hatch to Thompson does not create sufficient doubt that Hatch was the shooter instead of Clark.
 

 The record indicates that the evidence presented against Clark at trial was summarized by the trial judge as follows:
 

 On January 12, 1990, Ronald Wayne Clark and John David Hatch were hitchhiking from Yulee to Jacksonville, Florida to drink beer and shoot pool. At that time, Ronald Willis, who also lived in Yulee, was driving his pickup truck to Jacksonville.
 

 The victim, Ronald Willis saw [Clark] and [Hatch] hitchhiking, thought he recognized them and pulled over. Upon pulling nearer, [Willis] realized he did not recognize or know [Clark] and [Hatch], but agreed to give them a ride.
 

 [Willis] then gave [Clark] and [Hatch] a ride to Jacksonville. During this ride, [Clark] told [Hatch] that he was going to take [Willis’s] truck. The two men asked to be let off. [Willis] pulled his truck over to let them out. [Clark] pulled out a pistol and shot [Willis] seven to eight times in the head....
 

 [Clark] then stole [Willis’s] truck, dumped [Willis’s body off of Byrd Road and took off, along with [Hatch], in [Wil-ks’s] truck.
 

 [Clark] decided later that night that [Willis’s] body would have to be moved someplace where it would not be found soon or ever. He decided that [Willis’s] body should be dumped in a river.
 

 [Clark] and [Hatch] went back to Byrd Road and put [Willis’s] body in the pickup truck. They took the victim’s body to [Clark’s] father’s house where [Clark] got two cinder blocks and some rope. [Clark], accompanied by [Hatch], then took [Willis’s] body to the Nassau Sound River, where he tied the cinder blocks to the victim’s body. [Clark] then dumped [Willis’s] body into the Nassau Sound River. The victim’s body
 
 *893
 
 has never been recovered and probably never will be recovered.
 

 At trial, Clark himself testified that Hatch was the shooter and that he was merely an accomplice to the crimes. He also testified that Willis was a friend of his father and that he had no reason to shoot Willis. However, Thompson’s description of the crime is not consistent with Clark’s own version. Clark did not mention a drug deal or money. Further, Thompson’s testimony that Hatch said they dumped the body immediately after shooting Willis is not consistent with the evidence presented at trial. Finally, Thompson is serving multiple sentences and would probably not serve as a credible witness at a new trial. Accordingly, the postconviction court properly denied Clark’s claim of newly discovered evidence.
 

 CONCLUSION
 

 Having reviewed all of Clark’s claims and finding them either to be barred or meritless, we affirm the postconviction court’s order.
 

 It is so ordered.
 

 QUINCE, C.J., and PARIENTE, LEWIS, CANADY, POLSTON, LABARGA, and PERRY, JJ., concur.
 

 [1]
 

 . The trial judge found: (1) Clark was previously convicted of another capital felony, (2) the murder was committed during the commission of a robbery, and (3) the murder was committed for pecuniary gain. The trial judge considered and rejected the following mitigating factors: (1) prior criminal history, (2) extreme mental or emotional disturbance, (3) the victim was a participant in the conduct or consented to the act, (4) Clark was a minor participant, (5) Clark was under extreme duress or under substantial domination, (6) diminished capacity, and (7) Clark’s age at the time of the murder.
 

 [2]
 

 . On direct appeal, Clark argued that the trial court erred in allowing him to waive mitigation, that the trial court erred by finding murder in the course of a felony and pecuniary gain as separate aggravators, that the trial court failed to consider the mitigating evidence available in the record properly, and that his death sentence was disproportionate.
 

 [3]
 

 . The issues raised in Clark’s first amended motion were: Clark could not prepare an adequate 3.850 motion until he received public records — summarily denied; Clark was being denied right to effective assistance of counsel because the Office of Capital Collateral Representative (CCR) lacked adequate funding — summarily denied; the rule prohibiting the interviewing of jurors was unconstitutional — summarily denied; State actions denied Clark effective legal representation— summarily denied; Clark was innocent of first-degree murder and was denied adversarial testing — insufficiently pleaded; the State withheld evidence or presented misleading evidence or both — evidentiary hearing granted; Clark's counsel was ineffective at the sentencing phase (mitigation claim)— summarily denied; ineffective assistance of counsel at the guilt phase — evidentiary hearing granted; ineffective assistance of counsel during voir dire — evidentiary hearing granted; ineffective assistance of counsel for failing to obtain a competent mental health expert — summarily denied; newly discovered evidence showed that Clark’s conviction and sentence were unreliable (Clark did not specify what evidence was newly discovered) — insufficiently pleaded for failure to state facts to support relief sought and without merit; Clark was denied a reliable competency hearing — procedurally barred; Clark was incompetent to stand trial — procedurally barred; no adequate inquiry was made into whether Clark's waiver of mitigation was voluntary and intelligent — summarily denied; Clark’s sentence was unreliable because it rests upon Hatch's perjured testimony — evidentiary hearing granted; sentencing instructions to the jury unconstitutionally diluted its sense of responsibility — summarily denied; jury instructions were unconstitutionally burden shifting — procedurally barred; Clark’s sentence relied on an unconstitutional automatic ag-gravator — procedurally barred; jury instructions on the prior capital felony aggravator were constitutionally inadequate — procedurally barred; jury instructions on the pecuniary gain aggravator were constitutionally inadequate — procedurally barred; Florida’s capital-sentencing statute was unconstitutional — summarily denied; Clark was incompetent to waive any constitutional rights — procedurally barred; inflammatory and improper prosecutorial argument — insufficiently pleaded; jury misconduct — summarily denied; it was error to allow the jury to hear testimony about Clark's prior felonies — summarily denied; Clark was incompetent during pen-dency of the appeal and the record is incomplete — summarily denied; Clark's trial was materially unreliable — insufficiently pleaded; Clark was innocent of murder and the death penalty — insufficiently pleaded; cumulative error — insufficiently pleaded.
 

 In his second amended motion filed January 31, 2006, Clark raised twenty-one grounds for relief.
 

 [4]
 

 . It is unclear how or why the postconviction court granted an evidentiary hearing on this issue after Clark filed his second amended 3.851 motion. It appears that the court intended to grant the hearing on the same issues as it had granted a hearing on in the June 1996 Order.
 

 [5]
 

 . It appears the postconviction court confused Clark’s guilt phase and penalty phase ineffective assistance of counsel claims. Clark’s second claim in his second amended motion is that trial counsel was ineffective for failing to investigate and present mitigation. This was claim 7 in his first amended motion which was denied in the June 1996 Order. Claim 8 of Clark's first amended motion was that counsel was deficient during the guilt phase of his trial. The State did not oppose an evidentiary hearing, claiming an "inability to know the extent of the preparation performed by [Clark's] trial counsel.” This claim was thus both summarily denied without an evidentiary hearing in 1996 and denied after an evidentiary hearing in 2007. We treat this claim as having been denied after an eviden-tiary hearing.
 

 [6]
 

 .
 
 Spencer v. State,
 
 615 So.2d 688 (Fla.1993).
 

 [7]
 

 . Michael Thompson, an inmate at Union Correctional Institution, testified that he met Clark in the Death Row library and that, while looking over Clark’s paperwork, he recognized the name John Hatch as an inmate with whom he had served time at another prison. Thompson testified that Hatch told him that he’d had to testify against Clark to save his own life and that he, Hatch, was the actual shooter.
 

 [8]
 

 . The motion was not addressed nor were the pleadings amended.